75. Defendant has marked the following products with the phrase "patent pending," "patent applied for" or other words importing that an application for patent has been made, when no application for patent has been made, or, if made, is not pending (i) DJ Hero (for all video game consoles) (ii) Guitar Hero 5 (for all video game consoles); (iii) Band Hero (for all video game consoles); and (iv) Guitar Hero Smash Hits (for all consoles) (the "Patent Pending Marked Products") (*see* Ex. K through S.)

76. Defendant knew that the Patent Pending Marked Products did not have any associated patent applications pending.

77. Alternatively, because no patent applications are pending that would cover the Patent Pending Marked Products, Defendant cannot have any reasonable belief that the Patent Pending Marked Products had any associated patent applications pending.

78. Defendant intended to deceive the public by marking (or causing to be marked) the Patent Pending Marked Products with the phrase "patent pending," "patent applied for" or other words importing that an application for patent has been made.

79. Defendant falsely advertised the above-referenced products with patents which do not cover the scope of the products and/or language suggesting that the products were covered by pending patents or patent applications when no such patent applications were pending.

80. Defendant intended to deceive the public by falsely advertising the above-referenced products with such language.

## COUNT I
### (FALSE MARKING WITH OUT OF SCOPE PATENTS)

81. Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

82. Defendant falsely marked the Out of Scope '457 Products with the '457 patent, which has a scope that clearly does not cover the Out of Scope '457 Products.

83. Defendant knew or reasonably should have known that marking the Out of Scope '457 Products with the '457 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

84. Defendant intended to deceive the public by marking the Out of Scope '457 Products with the '457 patent.

85. Defendant falsely marked the Out of Scope '121 Products with the '121 patent, which has a scope that clearly does not cover the Out of Scope '121 Products.

86. Defendant knew or reasonably should have known that marking the Out of Scope '121 Products with the '121 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

87. Defendant intended to deceive the public by marking the Out of Scope '121 Products with the '121 patent.

88. Defendant falsely marked the Out of Scope '153 Products with the '153 patent, which has a scope that clearly does not cover the Out of Scope '153 Products.

89. Defendant knew or reasonably should have known that marking the Out of Scope '153 Products with the '153 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

90. Defendant intended to deceive the public by marking the Out of Scope '153 Products with the '153 patent.

91. Defendant falsely marked the Out of Scope '557 Products with the '557 patent, which has a scope that clearly does not cover the Out of Scope '557 Products.

92. Defendant knew or reasonably should have known that marking the Out of Scope '557 Products with the '557 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

93. Defendant intended to deceive the public by marking the Out of Scope '557 Products with the '557 patent.

94. Defendant falsely marked the Out of Scope '313 Products with the '313 patent, which has a scope that clearly does not cover the Out of Scope '313 Products.

95. Defendant knew or reasonably should have known that marking the Out of Scope '313 Products with the '313 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

96. Defendant intended to deceive the public by marking the Out of Scope '313 Products with the '313 patent.

97. Defendant falsely marked the Out of Scope '244 Products with the '244 patent, which has a scope that clearly does not cover the Out of Scope '244 Products.

98. Defendant knew or reasonably should have known that marking the Out of Scope '244 Products with the '244 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

99. Defendant intended to deceive the public by marking the Out of Scope '244 Products with the '244 patent.

100. Defendant falsely marked the Out of Scope '863 Products with the '863 patent, which has a scope that clearly does not cover the Out of Scope '863 Products.

101. Defendant knew or reasonably should have known that marking the Out of Scope '863 Products with the '863 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

102. Defendant intended to deceive the public by marking the Out of Scope '863 Products with the '863 patent.

103. Defendant falsely marked the Out of Scope '753 Products with the '753 patent, which has a scope that clearly does not cover the Out of Scope '753 Products.

104. Defendant knew or reasonably should have known that marking the Out of Scope '753 Products with the '753 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

105. Defendant intended to deceive the public by marking the Out of Scope '753 Products with the '753 patent.

106. Defendant falsely marked the Out of Scope '689 Products with the '689 patent, which has a scope that clearly does not cover the Out of Scope '689 Products.

107. Defendant knew or reasonably should have known that marking the Out of Scope '689 Products with the '689 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

108. Defendant intended to deceive the public by marking the Out of Scope '689 Products with the '689 patent.

109. Defendant falsely marked the Out of Scope '403 Products with the '403 patent, which has a scope that clearly does not cover the Out of Scope '403 Products.

110. Defendant knew or reasonably should have known that marking the Out of Scope '403 Products with the '403 patent is in violation of 35 U.S.C. § 292, which only authorizes marking on a "patented" article.

111. Defendant intended to deceive the public by marking the Out of Scope '403 Products with the '403 patent.

112. Defendant's actions are in violation of 35 U.S.C. § 292.

### COUNT II
### (FALSE PATENT PENDING MARKING)

113. Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

114. Defendant falsely marked the Patent Pending Marked Products with the phrase "patent pending," "patent applied for" or other words importing that an application for patent has been made, when no application for patent has been made, or, if made, is not pending. (*See* Ex. K through S.)

115. Defendant knew or reasonably should have known that marking the Patent Pending Marked Products with the phrase "patent pending," "patent applied for" or other words importing that an application for patent has been made is in violation of 35 U.S.C. § 292, because the Patent Pending Marked Products were not the subject to any pending patent application.

116. Defendant intended to deceive the public by marking the Patent Pending Marked Products with such language.

117. Defendant's actions are in violation of 35 U.S.C. § 292.

## COUNT III
## (FALSE ADVERTISING)

118. Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

119. Defendant falsely advertised the above-referenced products with patents which do not cover the scope of the accused products and/or language suggesting that the products were covered by pending patents or patent applications.

120. Defendant knew or reasonably should have known that falsely advertising the above-referenced products with such language is in violation of 35 U.S.C. § 292.

121. Defendant intended to deceive the public by marking the above-referenced products with such language.

122. Defendant's actions are in violation of 35 U.S.C. § 292.

### PRAYER FOR RELIEF

Patent Compliance Group requests the Court, pursuant to 35 U.S.C. § 292, to:

A.  Enter judgment against Defendant and in favor of Patent Compliance Group for the violations alleged in this Complaint;

B.  Enter an injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292;

C.  Order Defendant to pay a civil monetary fine of up to $500 per false marking "offense," one-half of which shall be paid to the United States and one-half of which shall be paid to Patent Compliance Group;

D.  Enter a judgment and order requiring each Defendant to pay Patent Compliance Group prejudgment and post-judgment interest on the damages awarded;

E.  Order Defendant to pay Patent Compliance Group's costs and attorney fees; and

F.  Grant Patent Compliance Group such other and further relief as it may deem just and equitable.

## JURY DEMAND

Patent Compliance Group, pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all issues so triable.

Dated: February 12, 2010

Respectfully submitted,

**ZWEBER P.C.**

By: *[signature]*
Michael C. Zweber
Texas State Bar No. 24003236
Zweber P.C.
4223 Buena Vista St., Suite 4
Dallas, Texas 75205
Telephone: 214-507-0508
Fax: 214-252-0205
mzweber@zweberlaw.com

**ATTORNEY FOR RELATOR
PATENT COMPLIANCE GROUP, INC.**

# Exhibit A



US005739457A

## United States Patent [19]
### Devecka

[11] Patent Number: **5,739,457**
[45] Date of Patent: **Apr. 14, 1998**

[54] **METHOD AND APPARATUS FOR SIMULATING A JAM SESSION AND INSTRUCTING A USER IN HOW TO PLAY THE DRUMS**

[76] Inventor: **John R. Devecka**, 286 Pershing Rd., Clifton, N.J. 07013

[21] Appl. No.: **720,295**

[22] Filed: **Sep. 26, 1996**

[51] Int. Cl.$^6$ .............................. G10H 1/32; G10H 3/00
[52] U.S. Cl. ....................... 84/743; 84/600; 84/477 R; 434/307 A
[58] Field of Search ................. 84/600, 651, 667, 84/743, 464 R, 464 A, 477 R; 434/307 A

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 1,613,400 | 1/1927 | McAlleavey . |
| 3,420,135 | 1/1969 | Wolf ............................ 83/478 |
| 3,731,582 | 5/1973 | Gullickson ..................... 84/478 |
| 3,958,487 | 5/1976 | Goldman ........................ 84/478 |
| 3,990,710 | 11/1976 | Hughes ......................... 274/1 R |
| 4,012,979 | 3/1977 | Wernekamp ..................... 84/1.01 |
| 4,080,867 | 3/1978 | Ratanangsu ..................... 84/477 R |
| 4,108,365 | 8/1978 | Hughes ......................... 235/419 |
| 4,286,495 | 9/1981 | Roof ............................ 84/485 |
| 4,583,443 | 4/1986 | Senghaas ........................ 84/484 |
| 4,694,723 | 9/1987 | Shinohara et al. ............... 84/1.03 |
| 4,695,903 | 9/1987 | Serap et al. .................... 358/335 |
| 4,781,097 | 11/1988 | Uchiyama et al. ................ 84/1.13 |
| 4,791,848 | 12/1988 | Blum, Jr. ....................... 84/453 |
| 4,915,005 | 4/1990 | Shaffer et al. .................. 84/314 |
| 4,919,030 | 4/1990 | Perron, III ..................... 84/470 |
| 4,932,303 | 6/1990 | Kimpara ......................... 84/621 |
| 4,947,725 | 8/1990 | Nomura ......................... 84/723 |
| 4,965,673 | 10/1990 | Bozzo et al. .................... 358/335 |
| 5,009,146 | 4/1991 | Manabe et al. ................... 84/615 |
| 5,027,687 | 7/1991 | Iwamatsu ........................ 84/600 |
| 5,036,742 | 8/1991 | Youakim ......................... 84/411 |
| 5,056,403 | 10/1991 | Yamashita ....................... 84/723 |
| 5,063,821 | 11/1991 | Battle .......................... 84/743 X |
| 5,107,743 | 4/1992 | Decker .......................... 84/478 |
| 5,140,889 | 8/1992 | Segan et al. . |
| 5,177,313 | 1/1993 | Miyamoto ....................... 84/611 |
| 5,183,398 | 2/1993 | Monte et al. .................... 434/277 |
| 5,206,842 | 4/1993 | Spector ......................... 369/4 |
| 5,214,231 | 5/1993 | Ernst et al. .................... 84/652 |
| 5,218,580 | 6/1993 | Okamura et al. . |
| 5,223,658 | 6/1993 | Suzuki .......................... 84/663 |
| 5,266,732 | 11/1993 | Suzuki .......................... 84/464 R X |
| 5,286,909 | 2/1994 | Shibukawa ....................... 84/609 |
| 5,394,784 | 3/1995 | Pierce et al. ................... 84/464 A |
| 5,408,914 | 4/1995 | Breitweiser, Jr. et al. ......... 84/477 R |
| 5,464,946 | 11/1995 | Lewis ........................... 84/609 |
| 5,481,509 | 1/1996 | Knowles . |
| 5,484,291 | 1/1996 | Nakai et al. .................... 434/307 A |
| 5,495,786 | 3/1996 | Choi ............................ 84/470 R |

*Primary Examiner*—William M. Shoop, Jr.
*Assistant Examiner*—Jeffrey W. Donels
*Attorney, Agent, or Firm*—Law Offices of Peter H. Priest

[57] **ABSTRACT**

An interactive electronic drum system and training techniques suitable for use in a coin-operated environment such as an arcade are described. Electronic drum pads, audio speakers, a visual display, training lights and an overall control system are combined to simulate the excitement of a live drum or inactive musical jam session for a user. Positive feedback and, as necessary, instructive aid are provided to make the experience a positive one for both the novice and the expert player. Learning and playing a musical instrument becomes an intuitive, exciting experience and not a boring chore to be endured. Players can simulate the experience of playing in a rock band before a live and appreciative audience. In short, this interactive electronic drum system makes drums and the jamming experience widely accessible to the public.

**36 Claims, 9 Drawing Sheets**





FIG. 1



FIG. 2

U.S. Patent        Apr. 14, 1998        Sheet 3 of 9        5,739,457



FIG. 3



FIG. 4



**FIG. 4A**



FIG. 4B



FIG. 4C



FIG. 5



**FIG. 6**

5,739,457

# METHOD AND APPARATUS FOR SIMULATING A JAM SESSION AND INSTRUCTING A USER IN HOW TO PLAY THE DRUMS

The present invention relates generally to methods and apparatus for providing an exciting interactive audio visual musical experience which may readily be enjoyed by a wide range of users having a range of experience from little or none to those having extensive musical training. More particularly, the present invention relates to an interactive electronic drum and music training method which are suitable for use in a home video game or a coin-operated environment such as an arcade to simulate the excitement of a live jam session for a user.

## THE BACKGROUND OF THE INVENTION

A wide variety of learning and teaching aids for musical instruments have been known for some time. See, for example, U.S. Pat. No. 4,919,030 "Visual Indication of Temporal Accuracy of Compared Percussive Transmit Signals," U.S. Pat. No. 5,036,742 "Tempo Monitoring Device and Associated Method," U.S. Pat. No. 5,945,786 "Method and Apparatus for Controlling Scale Practice of Electronic Musical Instrument," and U.S. Pat. No. 5,214,231 "Apparatus for Electronic Teaching Accompaniment and Practice of Music, Which is Independent of a Played Musical Instrument." These and like approaches may suffer from a variety of drawbacks. By way of example, they may only be used by experienced musicians or those with a significant knowledge of music theory. Alternatively, they may not be readily intuitive in their operation, or they are not designed to be fun and provide a positive experience which helps keep the user eager to learn.

For years, electronic drum pads have been available through music stores. Many patents describe a variety of aspects of such drum pads. See, for example, U.S. Pat. Nos. 4,781,097, 4,947,725, 4,932,303, 5,009,146, 5,177,313 and 5,233,658, all of which are incorporated by reference herein in their entirety. A first time user would have to purchase these relatively expensive pads and determine at a later date if he or she enjoyed playing drum pads, what is involved, and what the final outcome of their efforts would produce. After buying the pads, the user was typically left without guidance as to how to play them. Thus, the novice user did not have any formatted learning structure or any positive feedback to encourage continued learning. Further, typical musical instruction exercises are typically renowned for being dull and repetitious.

Further, a variety of coin-operated audio visual musical devices are presently known. See, for example, U.S. Pat. Nos. 3,990,710 "Coin-Operated Recording Machine," U.S. Pat. No. 4,695,903 "Audio Video Entertainment Module," and U.S. Pat. No. 4,965,673 "Apparatus for a Video Recording Booth." Additionally, a wide variety of action and adventure type video arcade games, such as auto race and various war or battle games in which the player fights against the machine or another player are known. None of these approaches provides a musical learning experience that is like a game or adventure encouraging a positive learning experience of a musical skill.

Standard video arcade games are very popular but often are violent in nature and involve a complex combination of button activations and joystick movements that may be daunting to the novice. As a result, a need exists for a non-violent game which provides a positive experience for the novice and the expert alike, and which is exciting enough to replace the standard beat-em-up, shoot-em-up fare that many adults find unacceptable.

## SUMMARY OF THE PRESENT INVENTION

The present invention addresses needs, such as those outlined above, by providing a unique combination of features and suitably packaging them so they may be appropriately enjoyed in an arcade setting. Home use can also be envisioned.

In one embodiment of the present invention, a money operated electronic drum system is provided in conjunction with audio-visual inputs to both help a user learn to jam on or play the drums and to enjoy the jamming experience. In this context, "jamming" may suitably be defined as free playing over music. That is to say not reading music, but rather intuitively and naturally playing and reacting to create music as the music proceeds. For example, a drum player may create suitable drum beats to match accompanying instruments such as a guitar or keyboard.

In one aspect, the present invention provides an interactive series of menus to guide a user to select a desired mode of operation. A series of cuing LEDs or other light indicia on or associated with the drum pads, or alternatively a video representation on a display may guide the user in the correct sequence and striking of the drum pads, and a control system controlling audio and video devices will provide appropriate feedback to both encourage the user and to make the experience enjoyable.

In one mode of the present invention, the user chooses to play along with his or her favorite type of music with the system including a source of music, such as a compact disk ("CD") player which may be of a jukebox format, a tape player, a radio or the like. In another mode of operation, the user tries to play along with drum progression which increase in difficulty. The control system monitors and scores the user's play, and also provides feedback to encourage the user.

Other features and advantages of the present invention are described further below and will be readily apparent by reference to the following detailed description and accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates one embodiment of drum apparatus in accordance with the present invention suitable for use in a money-operated arcade embodiment;

FIG. 2 illustrates in block diagram form further details of control and processing circuitry suitable for use in conjunction with the apparatus of FIG. 1;

FIG. 3 illustrates one overall flowchart of the operation of the drum apparatus of FIG. 1;

FIGS. 4–4C are more detailed flowcharts illustrating details of various possible play modes in accordance with the present invention;

FIG. 5 illustrates a menu selection technique in accordance with the present invention which assists a user in learning the various drum pads and how to strike those pads; and

FIG. 6 illustrates an embodiment of a suitable mounting arrangement for the mounting of drum pads of a drum apparatus, as in FIG. 1, in a small footprint cabinet suitable for use in an arcade environment.

## DETAILED DESCRIPTION

FIG. 1 shows an overall view of an audio-visual interactive drum studio system **100** in accordance with the present